UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| NAZMY JOSEPH, | ) |
|       Plaintiff, | ) Case No. EDCV 12-272 AJW |
|       v. | ) MEMORANDUM OF DECISION |
| CAROLYN J. COLVIN[1], Acting Commissioner of Social Security, | ) |
|       Defendant. | ) |

Plaintiff filed this action seeking reversal of the decision of defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2]. Plaintiff alleged that he became disabled on December 28, 2003 due to schizophrenia, paranoid thoughts, and depression. [AR 87]. In an November 2011 written hearing decision on remand that constitutes the Commissioner's final decision in this matter, Administrative Law Judge Tamara Turner-

---

[1] Carolyn W. Colvin is substituted for her predecessor in office, Michael J. Astrue. See Fed. R. Civ. P. 25(d).

Jones ("ALJ Turner-Jones" or "the ALJ") concluded that plaintiff was not disabled because he could perform alternative work available in significant numbers in the national economy. [Administrative Record ("AR") 392-400; JS 2].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Compliance with remand order**

Plaintiff contends that the ALJ did not comply with the order issued in a prior action for judicial review reversing the denial of benefits and remanding this case to defendant for further administrative proceedings. [JS 3-14; AR 411-418]. [See Memorandum of Decision and Judgment filed Dec. 4, 2007 in Nazmy Joseph v. Michael J. Astrue, Case No. EDCV 06-921 ("Joseph I")].

In Joseph I, this Court held that the administrative law judge who presided over that case, ALJ Duncan, erred in silently rejecting the September 2005 opinion of plaintiff's long-time treating psychiatrist, Dr. Ahluwalia, that plaintiff had a diagnosis of schizoaffective disorder and a "guarded" prognosis; that plaintiff's condition "prevents or substantially reduces" on a permanent basis his "ability to work full-time at his "customary job"; and that the onset date was 20 years earlier. [AR 307, 410-418]. The Court also held that ALJ Duncan improperly evaluated plaintiff's psychiatric treatment records, and that ALJ Duncan's faulty evaluation of the medical evidence tainted his credibility determination. [AR 411-418; see AR 11-16].

2

1    On remand, the Appeals Council vacated ALJ Duncan's hearing decision, assigned the case to ALJ Turner-Jones for further administrative proceedings and issuance of a new decision.  The ALJ conducted a supplemental hearing on March 30, 2011 and issued a new hearing decision. [AR 392-400, 575-600].

    In her hearing decision on remand, ALJ Turner-Jones summarized the medical evidence of record, including treatment reports Dr. Ahluwalia, the psychiatrist who treated plaintiff from 1993 through March 2009, and Warris Walayat, M.D., a psychiatrist who treated plaintiff beginning in December 2009 and continuing through the date of the hearing in March 2011. [AR 394-395; see AR 146-220, 268-280, 307-339, 518-523, 524-525, 548-574].  The ALJ's decision on remand fails to comply with the remand order in three respects.

    First, like ALJ Duncan, ALJ Turner-Jones the ALJ failed to comment on Dr. Ahluwalia's September 2005 opinion or articulate reasons for rejecting it, which is reversible error irrespective of the failure to comply with the remand order. [See AR 415]. See Hill v. Astrue, 698 F.3d 1153, 1160 (9th Cir. 2012) (holding that an ALJ's silent rejection of an examining psychologist's opinion that the claimant's "combination of mental and medical problems makes . . . sustained full time competitive employment unlikely" was not harmless error because that opinion was not simply an issue reserved to the Commissioner, but rather is "an assessment, based on objective medical evidence, of [the claimant's] *likelihood* of being able to sustain full time employment given the many medical and mental impairments [she] faced" and "should have been considered").

    Second, the ALJ selectively and erroneously relied on the opinion of the medical expert who testified during the 2006 hearing,  Dr. Malancharuvil, a psychologist.  He testified that plaintiff's "primary problem" was a personality disorder, as the Commissioner's consultative examiner concluded, rather than a psychotic or schizoaffective disorder, as Dr. Ahluwalia concluded. [AR 396-397].  The ALJ noted that Dr. Malancharuvil "found there was little evidence to support Dr. Ahluwalia's diagnosis of schizoaffective disorder because of the lack of evidence of schizophrenia, and it is apparent that [Dr. Walayat's] diagnoses of paranoid schizophrenia and major depressive disorder are based on the claimant's self-reported history of having been diagnosed as such in the past." [AR 396].  The ALJ concluded that Dr. Malancharuvil's impression of a personality disorder was "better supported" by the record as a whole. [AR 396].

    In the remand order, the Court held that ALJ Duncan erred in relying on the same testimony by Dr.

3

1  Malancharuvil to give minimal weight to Dr. Ahluwalia's findings in her treatment notes. Specifically, ALJ
2  Duncan erred in relying on Dr. Malancharuvil's characterization of the treatment notes as "meager, with
3  only a few sentences, and no thorough examinations and as evidence of a collusion of maintenance"
4  between plaintiff and Dr. Ahluwalia. [AR 415 (internal quotation marks omitted)].

5       As explained in greater detail in the remand order, Dr. Malancharuvil indicated that he had reviewed
6  only some of the treatment records from a treatment relationship that spanned over 15 years. [See AR 365].
7  Consequently, he was unaware of earlier findings Dr. Ahluwalia made and drew certain negative inferences
8  from the records he reviewed without giving full consideration to the context provided by the nature and
9  extent of the treatment relationship as a whole.  In addition, Dr. Malancharuvil's conclusion that plaintiff's
10 ongoing treatment with Dr. Ahluwalia produced little apparent improvement and was a "collusion of
11 maintenance" was overly negative in view of plaintiff's uncontroverted testimony that few providers in his
12 geographic area accepted his Medicare or MediCal benefits, and he could not afford the cost of treatment
13 otherwise. [See AR 377-379, 414-417]. See Warre v. Comm'r of the Soc. Sec. Admin., 439 F.3d 1001,
14 1006 (9th Cir. 2005) ("[B]enefits may not be denied to a disabled claimant because of a failure to obtain
15 treatment that the claimant cannot afford."); Regennitter v. Comm'r, Soc. Sec. Admin., 166 F.3d 1294,
16 1299-1300 (9th Cir. 1999) ("[I]t is a questionable practice to chastise one with a mental impairment for the
17 exercise of poor judgment in seeking rehabilitation."). For the reasons described in the remand order, Dr.
18 Malancharuvil's testimony does not justify the ALJ's rejection of Dr. Ahluwalia's diagnoses of plaintiff's
19 condition.

20      Third, ALJ Turner-Jones indicated that she gave significant weight to the report of the
21 Commissioner's examining psychologist, Dr. Goldman. who found that plaintiff's MMPI results were
22 "invalid" and "overendors[ed] psychopathology . . . " [AR 395]. In the remand order, the Court found that
23 "another weakness" in ALJ Duncan's decision was that he

24      adopted the diagnoses of depressive disorder not otherwise specified and a personality
25      disorder not otherwise specified made by the Commissioner's consultative psychologist, Dr.
26      Goldman. [AR 300-306]. During the hearing, however, the medical expert testified that the
27      MMPI [Minnesota Multiphasic Personality Inventory-2] indicated that [plaintiff] gave poor
28      effort and overendorsed  psychopathology. [AR 395].   However, Dr. Malancharuvil

4

acknowledged that test administered by Dr. Goldman was probably invalid because plaintiff, an immigrant from Egypt, is from another culture.[2] The ALJ seemed to accept that testimony. [AR 303, 365-367]. Since Dr. Goldman concluded that the MMPI showed that plaintiff was "over reporting the psychopathology in an attempt to appear more disturbed than he is in reality," the medical expert's testimony suggests that Dr. Goldman may have drawn an unfounded negative inference from plaintiff's MMPI results.

[AR 417 n.4 (footnoted added)].

ALJ Turner-Jones gave no indication that she heeded that aspect of the remand order or considered the possibility that plaintiff's MMPI results could have been invalid or tainted due to cultural bias, notwithstanding Dr. Malancharuvil's testimony favorable to plaintiff in this respect and the finding regarding that testimony in the remand order.

There are additional problems with the ALJ's decision. In determining the relative weight to be given the treating and non-treating source findings and conclusions, the ALJ failed to properly consider the findings and conclusions of Dr. Walayat, plaintiff's treating psychiatrist at San Bernardino County beginning in December 2009, as well as the degree of consistency between findings, diagnoses, and conclusions of Dr. Ahluwalia and Dr. Walayat. [See AR 548-574, 577, 591]. The ALJ noted that during Dr. Walayat's initial formal mental status examination in February 2010, plaintiff reported a history of chronic paranoid schizophrenia with depression. The ALJ concluded that "it is apparent that [Dr. Walayat's] diagnoses of paranoid schizophrenia and major depressive disorder are based on the claimant's self-reported history of having been diagnosed as such in the past." [AR 396]. That conclusion is contradicted by the ALJ's own summary of Dr. Walayat's mental status examination, which was positive for "auditory hallucinations ('you will be queen'), visual hallucination ('ghosts'), and paranoia ('being followed by the FBI')," as well as for depressed mood, inappropriate affect, and deficits in immediate memory and concentration. [AR 396, 567-569]. Dr. Walayat diagnosed schizophrenia, paranoid; major

---

[2] Dr. Malancharuvil testified that "to be fair to [plaintiff], they shouldn't have given him the MMPI because it's not culturally fair. He came from another culture. I don't know how valid that is anyway." [AR 365]. Dr. Malancharuvil subsequently testified that "unfortunately the tests are not terribly valid with him because of cultural issues, language issues, and other problems . . . ." [AR 371].

1    depressive disorder, recurrent, severe, with psychosis, and anxiety disorder, not otherwise specified
2    ("NOS") . [AR 395-396, 567-571]. The ALJ noted that Dr. Walayat initially "assessed a GAF[3] score of 45,
3    indicating serious symptoms or limitation in one functional domain and otherwise moderate limitation," and
4    continued to adjust plaintiff's medication during monthly visits. [AR 396]. The ALJ wrote that "the formal
5    mental status examination findings were within normal limits as of August 2010 except for depressed mood
6    and a GAF score of 50," still denoting serious symptoms or a serious functional impairment. See note 3,
7    supra. [AR 396]. However, the ALJ failed to acknowledge or discuss a note that appears in Dr. Walayat's
8    March 2011 treatment report. It is addressed "to whom it may concern" and states: "Mr. Nazmy Joseph has
9    a chronic paranoid schizophrenia on haevy [sic] medication to treat it. He is not able to keep his job as he
10   failed to keep his jobs as a bus driver and bank teller and security guard." [AR 549].

11         The ALJ did not articulate specific or convincing reasons based on substantial evidence for rejecting
12   Dr. Walayat's diagnoses, and she failed to give proper consideration to the consistency between the treating
13   source reports. See Edlund v. Massanari, 253 F.3d 1152, 1157 & n.6 (9th Cir. 2001) (stating that even
14   when not entitled to controlling weight, "treating source medical opinions are still entitled to deference and
15   must be weighed" in light of (1) the length of the treatment relationship; (2) the frequency of examination;
16   (3) the nature and extent of the treatment relationship; (4) the supportability of the diagnosis; (5) consistency
17   with other evidence in the record; and (6) the area of specialization) (quoting SSR 96-2p and citing 20
18   C.F.R. § 404.1527).    The ALJ offered her own interpretation of the signs and symptoms documented in
19   the treating source reports over the course of several years [see AR 394-396], but the ALJ's conclusions do

---

[3]   "GAF" stands for Global Assessment of Function, which is a "multiaxial" assessment that reflects a clinician's subjective judgment of a patient's overall level of functioning by asking the clinician to rate two components: the severity of a patient's psychological *symptoms,* or the patient's psychological, social, and occupational *functioning*. The GAF score is the lower of the symptom severity score or the functioning severity score. A GAF score of 41 through 50 denotes serious symptoms, such as suicidal ideation or severe obsessional rituals, or any serious impairment in social, occupational, or school functioning, such as the absence of friends or the inability to keep a job. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV") Multiaxial Assessment, 27-36 (rev. 2000); see also Vargas v. Lambert, 159 F.3d 1161, 1164 (9th Cir. 1998) (describing a GAF score as "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment").

not warrant rejecting the opinions of Dr. Ahluwalia or Dr. Walayat. See Regennitter, 166 F.3d at 1299 (rejecting the ALJ's conclusion that an examining psychologist's diagnoses and disability opinion was inconsistent with the claimant's "benign Mental Status Exam" ("MSE") and warranted only "moderate" mental functional restrictions where neither that psychologist nor a second examining psychologist "characterized the results of [the claimant's] MSEs as benign," and where their examination findings included tearfulness, sadness, monotone voice, and psychomotor retardation).

The ALJ also selectively adopted portions of Dr. Malancharuvil's testimony that were less favorable to plaintiff while rejecting relatively more favorable aspects of his testimony without any articulated rationale. For example, Dr. Malancharuvil testified that plaintiff had a diagnosis of "schizoaffective order, depressed," even though he was not "terribly persuaded" by the treatment reports, as well with a personality disorder NOS with dependent and avoidant features. [AR 363]. The ALJ found only that plaintiff had a depressive disorder NOS and a personality disorder NOS. [AR 394]. Dr. Malancharuvil also testified that the evidence indicated that plaintiff had one episode of decompensation in a work setting, referring to his 1994 firing; the ALJ rejected that finding simply because she disagreed with it. [AR 397].

The ALJ also rejected as "equivocal" Dr. Malancharuvil's testimony that plaintiff would have difficulty adjusting to supervision. [AR 397]. Dr. Malancharuvil testified that plaintiff had "demonstrated across his life significant personality dysfunction," exacerbated by the difficulties plaintiff faced after emigrating from Egypt, where he had been a dentist, to the United States, where he held jobs as a cleaner, laborer, school bus driver, cashier, and bank teller after failing the dental licensing examination eight times. [AR 343-345, 371-373, 582]. Dr. Malancharuvil opined that plaintiff had exhibited a "serious reactive depression" as a result of the "traumatic experience of coming [to this country] and not being able to function well" and "the pressure from the family for not providing for them . . . ." [AR 372]. Dr. Malancharuvil opined that plaintiff would be "interpersonally suspicious," "quite easily irritated with some types of supervision," "would have difficulty adjusting to authority figures," and "has serious adjustment reactions." [AR 372-373]. That testimony is not equivocal, and the ALJ's selective rejection of that testimony was unwarranted.

For all of the reasons described above, the ALJ did not comply with the remand order and erred in evaluating the medical evidence.

**Remedy**

In general, the choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or for payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa, 367 F.3d at 886 (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however,

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178).

An ALJ's noncompliance with a district court's remand order may be grounds for a remand for further administrative proceedings, but it does not entitle the claimant to an award of benefits unless a determination is made that the claimant "is, in fact, disabled" because there are no outstanding issues, and it clear that the ALJ would be required to award benefits if the improperly rejected evidence were credited. See Strauss v. Comm'r of the Social Sec. Admin., 635 F.3d 1135, 1137-1138 (9th Cir. 2011) (holding that the district court erred in awarding benefits for failure to follow its remand order without considering the alternative of remand to the agency and without determining whether the claimant was disabled); Ruiz v. Apfel, 24 F.Supp.2d 1045, 1050 (C.D. Cal. 1998) (remanding for further administrative proceedings where the remand order "ma[de] it very plain that the remand was for a limited purpose," and there was "no basis for the ALJ to review issues that had been determined in plaintiff's favor" and had not been appealed).

Two ALJs improperly rejected Dr. Ahluwalia's treating source findings and opinion in favor of the testimony of the nonexamining medical expert, Dr. Malancharuvil, and the consultative psychologist's report. ALJ Turner-Jones also failed to give appropriate weight to Dr. Walayat's treating source reports, which were consistent with those of Dr. Ahluwalia.

Remand for the payment of benefits is the appropriate remedy in this case. If the improperly rejected treating source opinions are credited as true, plaintiff has diagnoses of chronic paranoid schizophrenia and major depressive disorder and a lengthy history of those disorders that predates his alleged onset date, cannot perform his "customary job" [AR 307], and cannot keep a job. [AR 549].

Additional evidence in the record supports the conclusion that plaintiff's psychiatric condition is disabling. During cross-examination by plaintiff's counsel, Dr. Malancharuvil conceded that if the symptoms plaintiff reported to Dr. Ahluwalia were credited, then Dr. Ahluwalia reasonably could have concluded that plaintiff was totally disabled. [AR 370]. Dr. Malancharuvil acknowledged that there was no suggestion in the treating source reports that plaintiff was malingering. [AR 370]. He also testified that plaintiff would have difficulty responding to supervision and authority figures, limitations that the ALJ erroneously excluded when she found that plaintiff retained the RFC to "respond appropriately to supervisors and coworkers." [AR 398]. During the 2006 hearing, the vocational expert testified that if the hypothetical person was "easily irritated and is likely to become argumentative with his supervisor," that would further erode the occupational base of jobs otherwise within the person's RFC, but his testimony was unclear as to how much erosion that limitation would entail. [AR 386-387].

During the 2011 hearing, the ALJ asked the vocational expert to consider a hypothetical person whose limitations included being "off-task about ten percent of the workweek" due to psychological distractions" and who would to be reminded to stay on-task. [AR 596-597]. The ALJ incorporated that limitation into her RFC finding. [AR 398]. The vocational expert testified that being off task ten percent of the work week "is kind of right on the edge" because the person would lose almost an hour a day in productivity. [AR 596]. The vocational expert testified that such a person could not perform plaintiff's past relevant work but could perform the alternative jobs identified by the ALJ. If the amount of time off-task was 15% of a normal work week, the vocational expert testified that no jobs would be available. [AR 599].

Because the ALJ improperly rejected the treating source evidence regarding the nature and extent of plaintiff's limitations from schizoaffective disorder and Dr. Malancharuvil's testimony that plaintiff would have difficulty responding to supervision and authority figures, the reasonable inference is that the amount of time plaintiff would be off-task due to psychological distractions would increase beyond ten percent. The vocational expert's testimony warrants the inference that such an increase would preclude

9

plaintiff from working. That testimony, along with the treating source opinions, demonstrates that there are no outstanding issues requiring remand, and that the ALJ would be required to award benefits if the improperly rejected evidence is credited.

## Conclusion

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards. Accordingly, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for an award of benefits for the period beginning on plaintiff's alleged onset date, December 28, 2003.

**IT IS SO ORDERED.**

May 8, 2013

_____
ANDREW J. WISTRICH
United States Magistrate Judge